# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DAVID R. LOCKARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:17CV358 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff David R. Lockard brought this action to obtain review of a final decision of the Commissioner of Social Security denying his claims for social security disability benefits and supplemental security income. The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits alleging a disability onset date of April 1, 2013. (Tr. 322-25.) The application was denied initially and upon reconsideration. (*Id.* at 185-188, 194-201.) Plaintiff thereafter filed an application for supplemental security income. (*Id.* at 335-345.) At Plaintiff's request, an administrative law judge ("ALJ") held a hearing[1] and then determined, on June 24, 2015, that Plaintiff was not disabled under the Act.

---

[1] At the initial hearing, Plaintiff's counsel amended his alleged onset date from April 1, 2013 to December 17, 2013. (Tr. 50, 161.) The initial decision indicated that the amended alleged onset date was December 17, 2013. (*Id.* at 161.) At the second hearing, Plaintiff's counsel represented to the ALJ that his onset date was December 17, 2013. (*Id.* at 93.) However, the ALJ's second decision indicated that the alleged onset date was April 1, 2013. (*Id.* at 21.) The parties, in their briefing, both assert that the alleged onset date is April 1, 2013 and neither party raises an issue as to this potential discrepancy. (Docket Entry 10 at 2; Docket Entry 12 at 1.)

(*Id.* at 45-88, 161-174.) On October 19, 2015, the Appeals Council granted Plaintiff's request for review of the ALJ's decision and remanded the matter, directing the ALJ to clarify Plaintiff's severe impairments, give further consideration to Plaintiff's maximum residual functional capacity ("RFC") and, if warranted, obtain evidence from a vocational expert ("VE") to clarify the effect of the assessed limitation(s) on the claimant's occupational base. (*Id.* at 183-84.) The ALJ held a second hearing on March 22, 2016 at which a VE also testified. (*Id.* at 89-113.) On June 2, 2016, the ALJ again found that Plaintiff was not disabled under the Act. (*Id.* at 21-36.) On February 17, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-7.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that he is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity during the relevant period. (Tr. 23.) The ALJ next found the following severe impairments at step two: borderline intellectual functioning, mood disorder, anxiety disorders, and lumbago. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (*Id.* at 24.) The ALJ next set forth Plaintiff's RFC and determined that he could perform light work, except that he could also only perform simple, routine, repetitive tasks ("SRRTs") with occasional decision-making and occasional changes to work duties throughout the workday. (*Id.* at 26.) The ALJ also provided that "[h]e should not have any exposure to crowds with only casual and non-intense contact with others necessary to perform work duties." (*Id.* at 26-27.) At the fourth step, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at 34.) Last, at step five, the ALJ concluded that there were jobs in the national economy that Plaintiff could perform. (*Id.* at 35-36.) Consequently, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 36.)

## IV. ISSUES AND ANALYSIS

Plaintiff first contends that the ALJ materially erred in analyzing the weight attributed to a consulting psychologist. (Docket Entry 10 at 3-6.) Second, Plaintiff contends that the ALJ failed to properly address his ability to stay on task and his ability to function socially. (*Id.*

3

at 6-14.) Last, Plaintiff contends that the ALJ erred by relying on the testimony of a VE. (*Id.* at 14-18.) As explained below, none of these contentions have merit.

### 1. The ALJ Properly Applied the Treating Source Rule.

The treating source rule requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. *See* 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. *See* 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4); SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. For the following reasons, the weight the ALJ assigned to the provider(s) in question here is supported by substantial evidence.

More specifically, Plaintiff asserts that the ALJ erred in assessing "little weight" to the consultative opinions of psychologist Dr. J. Craig Hunt without providing sufficient reasons. (Docket Entry 10 at 3.) The ALJ analyzed Dr. Hunt's opinions[2] as follows:

---

[2] Dr. Hunt concluded that Plaintiff could perform SRRTs, but also suggested that Plaintiff may have considerable additional limitations beyond this, including moderate to marked difficulties in dealing with instructions. (Tr. 522, 573.)

4

> The claimant also has a history of mental health issues. J. Craig Hunt, Psy.D. saw the claimant in December of 2011 for a consultative examination associated with an earlier disability application and diagnosed major depressive disorder and borderline intellectual functioning (provisional). She [sic] additionally assessed "rule out" diagnoses of panic disorder, ADHD, reading disorder and disorder of written language (Exhibit 3F). When Dr. Hunt saw him for a second psychological consultative examination in January 2014, the claimant admitted he was not taking any prescription medications at that time. He felt that he did well when he was on Xanax in the past. Dr. Hunt assessed major depressive disorder, specific phobia – situational, ADHD (provisional), generalized anxiety disorder (provisional), borderline intellectual functioning, and rule out diagnoses of panic disorder, reading disorder, disorder of written language, and bipolar II disorder (Exhibit 7F).
>
> The undersigned has considered but given little weight to Dr. Hunt's consultative opinions because they rely heavily on the claimant's subjective reports of symptoms and limitations provided by the claimant and his wife. As discussed below, the totality of the evidence does not support her [sic] opinion. Moreover, Dr. Hunt's opinion appears to rely on the assessment of limitations resulting from an impairment for which Dr. Hunt has not treated or examined the claimant. Her [sic] opinion is without substantive evidence from other evidence of record, rendering it less persuasive. Overall, the undersigned found her [sic] opinion an overestimate of the severity of the claimant's restrictions and limitations, and based only on snapshots of the claimant's individual functioning (Exhibits 3F, 7F).

(Tr. 31.)

The ALJ's decision to afford Dr. Hunt's opinions "little weight" is well-supported. First, the ALJ considered Plaintiff's intellectual functioning. She pointed to claimant's past history of skilled and very skilled jobs, his evident ability to pass a driver's test and drive, and new education records showing a full scale IQ score of 77. (*Id.* at 31-32, 381-88, 68, 985.) This was substantial evidence demonstrating that he could perform SRRTs with few decisions

5

and few changes to work duties. (*Id.*)

Second, the ALJ considered Plaintiff's alleged emotional issues. She pointed out that "until only recently," Plaintiff's efforts to engage in mental health treatment were "minimal." (*Id.* at 32.) The ALJ then detailed those efforts at considerable length, noting, among other things, that in November of 2015 Plaintiff's mental status examination "remained overwhelmingly normal other than him appearing somewhat anxious." (*Id.* at 32-33, 951.) The ALJ also pointed to Plaintiff's history of drug seeking behavior and his failure to continue treatment with Daymark Recovery services after they declined to prescribe a benzodiazepine. (*Id.* at 33, 594, 602.) This, the ALJ concluded, raised questions about the severity of Plaintiff's symptoms and his efforts to comply with recommended treatment modalities. (*Id.*)

Third, the ALJ also pointed to the medical opinion of non-examining state agency physician Dorothy Holmes, PhD. (*Id.* at 33.) She concluded that Plaintiff could perform SRRTs with less than significant interaction with the general public. (*Id.* at 150-51.) The ALJ gave this opinion "great weight" because it was consistent with Plaintiff's past work history and his limited involvement in mental health services. (*Id.*)

Fourth, the ALJ also pointed to a witness statement indicating that claimant was only unable to work due to his back problem, as opposed to any mental or intellectual problems. (*Id.* at 33, 424.) The ALJ gave this report "some weight." (*Id.* at 33.)

Fifth, the ALJ engaged in a lengthy description of medical evidence as it related to Plaintiff alleged physical impairments. (*Id.* at 28-30.) In a summary following that description, the ALJ concluded that the severity of Plaintiff's functional allegations was inconsistent with

the longitudinal medical evidence, because (1) he did not establish care with a treating physician until August of 2014, (2) findings on examination and MRI were not correlated with the severity of his complaints, (3) there was a history of drug seeking behavior, and (4) Plaintiff reported that pain medication was generally effective. (*Id.* at 30.)

Sixth, the ALJ also concluded that Plaintiff had no restrictions in his activities of daily living. (*Id.* at 24.) Plaintiff told Dr. Hunt that he fed his dogs, went outside, went to the bus stop to pick up his grandson, did activities with his grandson at the house, took care of his own personal care activities, fed his chickens, walked to his neighbor's house to visit, and participated in household chores such as dishwashing, vacuuming, and dusting. (*Id.* at 24, 516, 570.) In September of 2014, Plaintiff admitted to exercising by walking around the neighborhood one to two days a week. (*Id.* at 24, 632.)

Seventh, the ALJ also observed that Dr. Hunt—who had only seen Plaintiff twice—had never treated him and only had a "snapshot" of his functioning on a particular day. (*Id.* at 31, 515-523, 568-573.) *See* 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii).

Eighth, the ALJ was also correct in noting that Dr. Hunt's consultative opinions relied heavily on Plaintiff's subjective complaints. In that regard, Dr. Hunt's description of Plaintiff's mental status examinations and his activities of daily living (discussed above) are inconsistent with the severity of limitations he ultimately attributed to Plaintiff. (Tr. at 24, 516, 570.) *See Miller v. Astrue*, No. CIV.A. 8:10-1142-HMH, 2011 WL 1576203, at *17 (D.S.C. Apr. 7, 2011) (unpublished), *report and recommendation adopted sub nom. Miller v. Comm'r, Soc. Sec. Admin.*, No. CA 8:10-1142-HMH-JDA, 2011 WL 1561058 (D.S.C. Apr. 26, 2011) (unpublished). For these

7

reasons, the ALJ's treatment of Dr. Hunt's opinions is supported by substantial evidence.[3]

## 2. The ALJ Adequately Accounted for Plaintiff's Moderate Limitations.

Plaintiff next faults the ALJ for failing to adequately address his moderate limitations in concentration, persistence, and pace ("CPP") and moderate limitations in social functioning. (Docket Entry 10 at 6-14.) This argument also lacks merit.

RFC measures the most a claimant can do despite any physical and mental limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. *See Hines*, 453 F.3d at 562-63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ must then match the claimant's exertional abilities to an appropriate level of work (*i.e.*, sedentary, light, medium, heavy, or very heavy). *See* 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. *See* 20 C.F.R. §§ 404.1569a(c), 416.969a(c). As for a function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work . . . ." SSR 96-8p, 1996 WL 374184, at *1 (1996).

---

[3] Plaintiff's arguments to the contrary are not persuasive. He contends that the ALJ failed to point to evidence in support of his conclusion that Dr. Hunt's opinions were at odds with the remainder of the record and were based instead on subjective complaints. (Docket Entry 10 at 3-6.) As demonstrated above, this is not so. Additionally, at no point does Plaintiff discuss the contents of Dr. Hunt's opinions, explain what portion of Dr. Hunt's opinions the ALJ should have adopted, discuss any medical evidence of record, or contest any of the findings of the ALJ as they relate to the medical evidence discussed above. This objection should be overruled.

8

Additionally, the Fourth Circuit recently addressed SSR 96-8p and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. *Mascio*, 780 F.3d at 636-37. In *Mascio*, the Fourth Circuit remanded the matter, in pertinent part, because the hypothetical the ALJ posed to the VE, and the corresponding RFC assessment, did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation process, the ALJ determined that the claimant had moderate difficulties in CPP. *Mascio*, 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why moderate difficulties in CPP did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

As noted, Plaintiff contends that the ALJ erred in addressing his moderate limitations. As explained below, this is not the case.

### a. CPP

Here, the ALJ sufficiently explained why Plaintiff's moderate limitations in CPP did not translate into further restrictions in the RFC. For example, the ALJ gave "great weight"

9

to the medical opinion of Dr. Holmes, the non-examining state agency physician discussed earlier. (Tr. 33.) Dr. Holmes examined the extant record and concluded that Plaintiff had moderate limitations in his ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.* at 150.) Nevertheless, Dr. Holmes concluded that Plaintiff's limitation in this regard could be accounted for if he were limited to the performance of SRRTs. (*Id.*) This is the precise limitation the ALJ adopted here. (*Id.* at 26.) Moreover, in giving Dr. Holmes' opinion "great weight," the ALJ noted that her opinion was consistent with the claimant's past work history and his limited involvement in mental health treatment on the whole, both of which are discussed above. (*Id.* at 33.) This alone constitutes substantial evidence in support of the ALJ's mental RFC determination and accounts for why additional limitations in CPP were not required in the RFC.[4]

Regardless, the ALJ did more than this. The ALJ also explained, for example, that although Plaintiff had "no more than moderate difficulties" in CPP, Dr. Hunt found his recent memory and remote memory were grossly intact and his judgment appeared grossly intact. (*Id.* at 24, 571.) Later in the decision, the ALJ also noted that Plaintiff had a driver's license and was able to drive, which is also evidence of his ability to concentrate and stay on task. (*Id.* at 26, 569.) The ALJ also gave "some weight" to a report completed by Plaintiff's cousin, who stated that Plaintiff could pay attention for 30 minutes, follow verbal instructions, and was

---

[4] *See, e.g., Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017); *Brown v. Colvin*, No. 1:15-CV-46, 2016 WL 1261211, at *3 (W.D.N.C. Mar. 31, 2016) (unpublished).

10

good at following spoken instructions as long as the instructions were not lengthy or confusing. (*Id.* at 33, 402.) Indeed, Plaintiff acknowledged in his own report that he could pay attention for 30 to 45 minutes and could follow verbal instructions "ok" as long as they were not lengthy. (*Id.* at 394.) The ALJ also noted that a doctor examined Plaintiff in August 2015 and found his remote memory was intact to interview questioning. (*Id.* at 33). Plaintiff registered 3/3 items, spontaneously recalled 1 out of 3 items, and recalled the other 2 items with a category prompt. (*Id.* at 33, 957.) Furthermore, Plaintiff's mental status examination in November 2015 was normal. (*Id.* at 33, 951.) The ALJ did not err here.

### b. Social Functioning

Plaintiff next argues that the ALJ did not explain how he would be able to accept instructions and criticism from supervisors. (Docket Entry 10 at 13.) This is not so. Dr. Holmes concluded that Plaintiff was moderately limited in his ability to interact appropriately with the general public, but not, in pertinent part, significantly limited in his ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 150-51.) The ALJ gave Dr. Holmes' opinion great weight and provided in Plaintiff's RFC that "[h]e should not have any exposure to crowds" and should have only "non-intense contact with others necessary to perform work duties." (*Id.* at 27, 33.) This alone constitutes substantial evidence in support of the ALJ's mental RFC determination and accounts for why additional limitations in social functioning were not required in the RFC.[5]

---

[5] See *supra* note 4.

11

Case 1:17-cv-00358-WO-JLW   Document 13   Filed 06/08/18   Page 11 of 16

The ALJ also adequately addressed Plaintiff's social functioning by noting that he admitted to walking to his neighbor's house to visit, taking a friend to the airport, and watching football with another neighbor, all of which suggest no difficulties with social functioning beyond those set forth in the RFC. (*Id.* at 24, 570-71.) Plaintiff also acknowledged in a report that he got along with authority figures "very good" and had never been fired from a job because of problems getting along with other people. (*Id.* at 395.)

Moreover, as the Commissioner accurately points out (Docket Entry 12 at 17), Plaintiff does not point to evidence indicating that he would likely have problems accepting instructions and criticism from supervisors. (Docket Entry 10 at 13.) Given that Plaintiff has not pointed to any evidence to suggest that he had a meaningful problem dealing with supervisors, this argument is unpersuasive.

Last, at no point does Plaintiff explain what additional limitation he believes he is entitled to in his RFC determination. Instead, he simply asserts that a perfunctory remand is in order because the ALJ failed to reconcile his moderate limitations in CPP and social functioning with a mental RFC that included, but was not limited to, SRRTs, with occasional decision-making, occasional changes to the work duties, and limited exposure to crowds and individuals.[6] As explained above, however, the ALJ provided a sufficient explanation as to why Plaintiff's moderate limitations were accounted for.

---

[6] *See, e.g., Burger v. Colvin*, No. 7:14CV00190, 2015 WL 5347065, at *14 (W.D. Va. Sept. 14, 2015) (unpublished); *Parms v. Colvin*, No. 1:13CV1002, 2015 WL 1143209, at *4 (M.D.N.C. Mar. 13, 2015) (unpublished), *recommendation adopted*, Slip Op. (M.D.N.C. March 31, 2015) (unpublished).

### 3. The ALJ's Step Five Analysis Is Supported by Substantial Evidence.

Relying on VE testimony in response to a hypothetical from the ALJ, the ALJ concluded that an individual with Plaintiff's RFC could work as a labeler (DOT 209.587-034) and splicer-photo finishing (DOT 976.684-026). (Tr. 35, 110-11.) These positions require a reasoning level[7] of two according to the Dictionary of Occupational Titles ("DOT").[8] *See* DOT 209.587-034, Marker, *available at* 1991 WL 671802 (4th Ed. Rev. 1991) ("Reasoning: Level 2"); DOT 976.684-026, Splicer, *available at* 1991 WL 688615 (4th Ed. Rev. 1991) ("Reasoning: Level 2"). Plaintiff now contends that, "[t]he ALJ's failure to question the [VE] about apparent conflicts is not harmless because unexplained apparent conflicts exist" between a reasoning level of two and a limitation to SRRTs. (Docket Entry 10 at 15.)

SSR 00-4p requires ALJs to ask about conflicts between the evidence provided by the VE and the DOT. SSR 00-4P at *4. In *Pearson v. Colvin*, the Fourth Circuit clarified that the ALJ has two duties when it comes to assessing VE testimony:

> First, the ALJ must '[a]sk the [VE] . . . if the evidence he or she has provided conflicts with information provided in the

---

[7] The DOT defines six reasoning levels in ascending levels of complexity. For example, the DOT has defined reasoning level two as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT, Appendix C *available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM. Reasoning level one is defined as the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.*

[8] *See Pearson v. Colvin*, 810 F.3d 204, 205 (4th Cir. 2015) ("The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . are Social Security Administration resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations.").

13

[*Dictionary*]'; and second, '[i]f the [VE]'s . . . evidence appears to conflict with the [*Dictionary*],' the ALJ must 'obtain a reasonable explanation for the apparent conflict.'

*Pearson*, 810 F.3d at 208 (quoting SSR 00-4p). The Fourth Circuit has interpreted this second duty to include an independent investigation by the ALJ. *Id.* at 209.[9]

Here, the question is whether there is an apparent conflict between Plaintiff's mental RFC (which, in pertinent part, was limited to SRRTs) and jobs with a reasoning level of two. The Fourth Circuit has not addressed the matter in a published opinion, nevertheless it has held in an unpublished case, "that there is an apparent conflict between an RFC that limits [the claimant] to one-to-two step instructions and GED Reasoning Code 2, which requires the ability to understand detailed instructions." *Henderson v. Colvin*, 643 Fed. App'x 273, 277 (4th Cir. 2016). *Henderson* is inapplicable in this case, however, because it only addressed a mental RFC limiting a claimant to one-to-two step instructions, not to SRRTs. Many courts, including courts in this district,[10] have considered this issue and have concluded, either explicitly or implicitly, that a limitation to SRRTs is not inconsistent with the performance of

---

[9] Here, the VE testified that her testimony was consistent with the DOT, except that the work-related limitations such as dealing with crowds, changes in the work duties, and changes in decision-making were answered after relying on a variety of other sources, including the VE's own research and experience. (Tr. 112.) This was a proper explanation. The ALJ was under no obligation to further question the VE. Indeed, Plaintiff's counsel did not question the VE regarding this explanation.

[10] *See, e.g.*, *Collins v. Berryhill*, No. 1:17CV224, 2018 WL 278667, at *5 (M.D.N.C. Jan. 3, 2018) (Webster, M.J.) (unpublished), *rec. adopted*, Slip Op., (M.D.N.C. Jan. 25, 2018) (Eagles, J.) (unpublished); *Lawrence v. Berryhill*, No. 1:16CV1310, Slip Op., at 5-6 (M.D.N.C. Nov. 17, 2017) (unpublished) (collecting cases) (Webster, M.J.), *rec. adopted*, Slip Op., (M.D.N.C. Dec. 20, 2017) (Eagles, J.) (unpublished).

14

Case 1:17-cv-00358-WO-JLW   Document 13   Filed 06/08/18   Page 14 of 16

level two reasoning.[11] The undersigned again finds the reasoning in these cases persuasive and concludes that *Henderson* is inapposite. Consequently, the Court concludes that there is no conflict between the ALJ's conclusion that Plaintiff can perform jobs requiring level two reasoning and also perform SRRTs. As such, the ALJ did not fail to identify and resolve an apparent conflict, because there was no such conflict.

Plaintiff also contends that there is a conflict between the descriptions in the Occupational Information Network ("O*Net") of the jobs the ALJ concluded he can perform here and limitations the ALJ placed in the RFC to "casual and non-intense contact with others." (Docket Entry 10 at 18; Tr. 27.) However, SSR 00-4p only requires ALJs to identify and resolve apparent conflicts between VE testimony and the DOT, not the O*Net. *See* SSR 00-4p, 2000 WL 1898704, at *2; *Walker v. Berryhill*, No. CV 16-01040-KES, 2017 WL 1097171, at *3 (C.D. Cal. Mar. 23, 2017) (unpublished). Moreover, Plaintiff does not cite to any other authority to support his argument that ALJs must identify and resolve apparent conflicts between the VE's testimony and the O*Net (*see* Docket Entry 10 at 18), and other courts have rejected Plaintiff's position, *Spurlock v. Berryhill*, No. 1:17CV411, 2018 WL 791302, at *8 (M.D.N.C. Feb. 8, 2018) (unpublished) (Auld, M.J.) (collecting cases) *recommendation adopted*, Slip Op. (M.D.N.C. March 21, 2018) (unpublished). For all these reasons, this argument lacks

---

[11] *Compare Dardozzi v. Colvin*, No. SAG-16-20, 2016 WL 6085883, at *5 (D. Md. Oct. 18, 2016) (unpublished); *Silver v. Comm'r of Soc. Sec.*, No. CV SAG-15-3453, 2016 WL 6126298, at *5 (D. Md. Oct. 20, 2016) (unpublished); *Roundtree v. Berryhill*, No. 4:15-CV-00154-F, 2017 WL 398368, at *3 (E.D.N.C. Jan. 30, 2017) (unpublished); *but see Dewalt-Gallman v. Berryhill*, No. CV 9:16-2332-PMD-BM, 2017 WL 2257418, at *3-4 (D.S.C. May 5, 2017) (unpublished), *reco. adopted*, 2017 WL 2225133 (D.S.C. May 22, 2017) (unpublished).

merit.[12]

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct and supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment (Docket Entry 9) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) be **GRANTED**, and the final decision of the Commissioner be upheld.

June 8, 2018

Joe L. Webster
United States Magistrate Judge

---

[12] Plaintiff's contention that the limitation to "casual, non-intense contact" was somehow problematic because it was either in apparent conflict with the O*Net, or because it was not defined further by the ALJ, is also unpersuasive. (Docket Entry 10 at 13, 18.) *See Campusano v. Berryhill*, No. 3:17-CV-499, 2018 WL 1566332, at *3 (W.D.N.C. Mar. 30, 2018) (unpublished). Here, the VE expressed no confusion as to what "casual, non-intense contact" was, nor did Plaintiff's counsel object to the term or seek further clarification. (Tr. 110-112.)

16